UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re

     YVONNE M. WASSON,                         08-11185 B

          Debtor

------------------------------------------------------

In re

     MARIAM RODRIGUEZ,                    08-10574 B

          Debtor

------------------------------------------------------

<u>DECISION & ORDER</u>

          Scott F. Humble, Esq.
          7 Jackson Ave., W.E.
          Jamestown, New York 14701-2408
          Attorney for the Debtors

          Steven J. Baum, P.C.
          Marc D. Hess, Esq., of counsel
          220 Northpointe Parkway, Suite G
          Amherst, New York 14228
          Attorneys for M&T Bank and for
                  Wells Fargo Bank, N.A.

Bucki, Chief U.S.B.J., W.D.N.Y.

     In these Chapter 13 cases, the debtors have objected to proofs of claim that

seek to recover legal fees and expenses incurred in connection with the foreclosure

of first mortgages on their respective homesteads.  The objections require that we

consider the consequences that follow from the application of rules regarding

burden of proof.

     Yvonne M. Wasson and Mariam Rodriguez each own a homestead in the City

of Jamestown, New York.  To preclude a foreclosure of their respective properties,

Wasson and Rodriguez have filed separate petitions for relief under Chapter 13 of

the Bankruptcy Code. In each of their cases, this court has confirmed a plan that proposes to cure the outstanding mortgage default through payment of all arrears. The present disputes relate to the amount that the mortgagees have claimed as due.

In schedules submitted with her petition, Yvonne Wasson reported ownership of a residence having a fair market value of $26,000, but with an outstanding mortgage lien given to secure a note to Wells Fargo Bank, N.A. ("Wells Fargo"). With respect to this mortgage, the schedules acknowledge a principal indebtedness of $42,269.00 and outstanding arrears in the amount of $3,500. With one exception, these numbers are consistent with a proof of claim that Wells Fargo has filed. That exception arises from the Bank's demand for payment of legal fees and other costs associated with a foreclosure action. Specifically, Wells Fargo seeks attorneys' fees in the amount of $875, foreclosure costs in the amount of $930.41, property inspection fees totaling $92.50, and a charge of $95 for the cost of a broker's price opinion.

Mariam Rodriguez has filed schedules acknowledging ownership of a homestead having a value of $36,000. The debtor further reports that her property is encumbered by a mortgage that secures the claim of M&T Bank ("M&T") for the outstanding principal sum of $26,014, together with interest and other arrears in the amount of $2,400. Like Wells Fargo in the Wasson case, M&T has filed a proof of claim that essentially seeks to recover the acknowledged arrears, plus an additional sum for foreclosure fees and expenses. Specifically, the bank's claim includes a demand for payment of attorneys' fees in the amount of $375, foreclosure costs of $400, a property inspection fee of $60, a charge of $100 for a Broker's Price Opinion, and an additional legal fee of $150 for preparation of a proof of claim.

Wasson and Rodriguez each object to the claim filed by her mortgagee. The debtors contend that various of the disbursements are excessive and that the creditors have failed to satisfy their burden to justify the reasonableness of legal fees. The mortgagees respond that they seek only their customary expenses and fees, and that these charges represent reasonable allowances as permitted under the terms of the loan agreements.

## Discussion

Both in the mortgage that Wasson gave to Wells Fargo and in the mortgage that Rodriguez gave to M&T, the following language of paragraph 14 speaks to the recovery of fees and expenses:

> Loan Charges. Lender may charge me [the borrower] fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

Most notably, this section allows fees when incurred "for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument," and only when not prohibited by applicable law. In considering these limitations, let us separately examine the attorneys' costs and fees related to foreclosure, inspection and valuation fees, and the charge for preparing a proof of claim.

Attorneys' Costs and Fees: Both debtors challenge the reasonableness of the foreclosure costs. In the Wasson matter, these costs included an index number fee of $210, a lis pendens filing fee of $35, a title search or abstract charge of $435, expenses of $250.41 for service of the summons and complaint, and attorneys' fees of $875. Because Ms. Rodriguez filed her bankruptcy petition prior to commencement of a foreclosure action, her foreclosure costs included only a title search fee

of $400 and legal fees of $375.  In particular, the debtors assert that in both cases, the title update charges far exceed the usual costs for these services and that the mortgagees fail to establish the reasonableness of their attorneys' fees.  Wells Fargo and M&T respond that a presumption of validity attaches to proofs of claim, so that the mere assertion of unreasonableness will not suffice to challenge the stated amounts.

Bankruptcy Rule 3001(f) states that a "proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim."  As noted by one leading treatise, "[t]he party objecting to the claim has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity." 9 COLLIER ON BANKRUPTCY ¶3001.09[2] (ALAN N. RESNICK & HENRY J. SOMMER eds.-in-chief, 15th ed. rev., 2007). In applying this standard of proof, however, the court must also honor the law regarding the underlying basis of claim.  Here, the remedy of foreclosure derives from New York statutes, so that an objector can satisfy its initial burden by showing that the claim lacks sufficient foundation under state law.

Articles 82 and 83 of the New York Civil Practice Law and Rules establish guidelines for the allowance of costs and fees in a foreclosure proceeding.  In each of the instant cases, the mortgagee's proof of claim references disbursements that would fall within the types of costs that are allowable under N.Y.C.P.L.R. §8301(a) (McKinney 1981).[1]  Beyond the mere assertion that a different provider might have charged a substantially lower fee for an updated title report, the debtors have submitted no evidence regarding the unreasonableness of any disbursement. Because the debtors fail to overcome the presumption of validity that attaches to this portion of the claim, any objection to the stated foreclosure disbursements is

---

[1]Because the list of allowable costs does not include inspection and valuation fees, this opinion will hereafter discuss those items separately.

overruled.  Attorneys' fees present  a different problem, however, because New York law assigns a different burden with regard to proof of their reasonableness.

As a general rule, the parties to any litigated matter must each bear the cost of their own legal representation.  *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 NY2d 487, 491 (1989); *City of Buffalo v. J. W. Clement Co.*, 28 NY2d 241, 262-63 (1971); *Levine v. Infidelity, Inc.*, 2 A.D.3d 691, 692 (2003).  In the context of a foreclosure proceeding, however, New York law recognizes three exceptions to this rule.  First, pursuant to N.Y.C.P.L.R. §8201 and N.Y.C.P.L.R. §8302, when an action has been commenced, the plaintiff may recover certain costs and additional allowances as a matter of right.  The amount of these costs and allowances, however, will depend upon whether the case has proceeded to a judgment of foreclosure and sale.  Prior to judgment, the maximum recovery is set at $125.  N.Y.C.P.L.R. §8302(b)(c) and (d).  For example, prior to the filing of Wasson's bankruptcy petition, Wells Fargo had started its foreclosure action but had not yet secured a judgment.  Hence, at this point, the statutory allowance would total $125.  In contrast, Mariam Rodriguez filed her bankruptcy before the start of foreclosure proceedings, so that the statute makes no provision for the cost of litigation.

Second, N.Y.C.P.L.R. §8303 allows the state court to award a discretionary allowance as part of the judgment of foreclosure and sale.  This discretionary allowance is set at $300 for most foreclosure proceedings, N.Y.C.P.L.R. §8303(a)(1), but may increase to as much as $3,000 for a "difficult or extraordinary case, where a defense has been interposed."  N.Y.C.P.L.R. §8303(a)(2).  In the present instances, the state court has not issued a judgment, so that the plaintiffs can receive no such discretionary award.

The third exception occurs when the mortgage itself authorizes the recovery of legal fees.  *Green Point Savings Bank v. Tornheim*, 261 A.D.2d 360 (1999);

*Community Savings Bank v. Shaad*, 105 A.D.2d 1063, 064 (1984). Under New York

law, however, such recovery requires proof of the reasonableness of compensation,

through a showing that counsel has charged a fair hourly rate for necessary services

actually performed. This applicable standard was summarized by the court in

*SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 33 A.D.3d 986, 988 (2006)(citations

deleted):

> An award of reasonable attorneys' fees is within the sound discretion of the court, based upon such factors as the time and labor required, the difficulty of the issues involved, and the skill and effectiveness of counsel. While a hearing is not required in all circumstances, "the court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered." There must be a sufficient affidavit of services, detailing "the hours reasonably expended . . . and the prevailing hourly rate for similar legal work in the community."

Essentially, therefore, New York imposes upon the mortgagee a burden to justify

the recovery of a contractual claim for the value of legal services rendered in the

foreclosure process.

In the present disputes, the mortgagees enjoy the benefit of presumed

validity for their proofs of claim for attorneys' fees but carry the burden of proving

reasonableness. The debtors have resolved the problem of contradicting burdens,

however, by coming forward in the first instance to countermand the presumption

of claim validity. In presenting their objections, the debtors demonstrated that the

proofs of claim included no evidence to support the reasonableness of the attorneys'

charges. By this simple demonstration, the debtors have overcome the prima facie

evidence of the claims, and have shifted to their opponents the burden under state

law to justify the fee allowance. As stated by Justice Souter on behalf of a

unanimous Supreme Court, "bankruptcy does not alter the burden imposed by the

substantive law." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 17 (2000).

Because Wells Fargo and M&T have presented no record or description of time

spent, we must now disallow any legal fee liability under paragraph 14 of the mortgages.

In their brief, counsel for the respondents argue that it has become "the prevailing practice within the foreclosure industry to base fees on a flat rate rather than more traditional hourly billing." For this reason, the mortgagees urge the court to accept their stated charges until such time as the debtors prove their unreasonableness. Such is not the standard under New York law, which requires that the lender justify its legal fees. In the face of objection, we must deny any contractual claims for legal services that are not supported by proof of their amount and value.

Neither Wells Fargo nor M&T have presented sufficient evidence to allow a contractual claim for legal fees. M&T's claim for attorneys' fees in the amount of $400 must therefore be disallowed in full. Because Wells Fargo did commence foreclosure proceedings against Yvonne Wasson prior to the filing of her bankruptcy petition, however, Wells Fargo would be entitled to a statutory allowance in the amount of $125. Accordingly, the claim of Wells Fargo against the estate of Ms. Wasson will be reduced by $750, that being the difference between the amount of their attorneys' fee claim and $125.

Inspection and Valuation Fees: Generally, any abandonment of residential property will impose additional risks, especially with regard to unmitigated weather damage and vandalism. Anticipating the possibility of an abandonment, prudent mortgagees will inspect their collateral in any instance of a payment default. In the event of an abandonment, the lender would then take steps to secure the property. Pursuant to paragraph 14 of their mortgages, therefore, Wells Fargo and M&T may recover any reasonable inspection fees, in that they are incurred "for the purpose

of protecting Lender's interest." Not challenging the reasonableness of the inspection fees, Wasson and Rodriguez are appropriately charged for this expense.

Valuation expenses are of a different character. Paragraph 14 of the mortgages will allow the recovery of certain valuation fees, but only if those fees serve to protect the interests and rights of the lender. The need for a property valuation will most commonly arise after a foreclosure sale that yields insufficient proceeds to satisfy the outstanding obligation and costs. To obtain a deficiency judgment under New York law, a mortgagee must show "the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof." N.Y. REAL PROP. ACTS. & PROC. LAW §1371 sub. 2 (McKinney 1979). The deficiency is then calculated as the difference between the borrower's liability and the higher of the sale price or the market value of the property. In the present instances, where the foreclosure sale has yet to occur, the mortgagees do not even know whether the sale proceeds will suffice to pay their debt and allowable costs. Because we deal with readily marketable properties, an appraisal is now premature for purposes of any deficiency proceeding. Nonetheless, each of the mortgagees obtained a Broker's Price Opinion shortly after the debtors had defaulted on their payment obligations. Thus, the present circumstances resemble those in *In re Zunner*, 396 B.R. 265, 266 (Bankr. W.D.N.Y. 2008), where this court found that the Broker's Price Opinion "really does nothing to protect value." Because the lender accepted its exposure when the loan was closed, a post-closing valuation becomes meaningless for purposes of limiting risk. Meanwhile, its utility to the liquidation process will not occur until after the foreclosure sale. The Brokers' Price Opinions here provide no obvious protection to the lenders, and neither lender has suggested any potential benefit. Accordingly, the court finds no justification for the recovery of this expense from the debtors.

Proof of Claim Charges: In the Rodriguez case, M&T seeks $150 for the legal expense of preparing a proof of claim. Perhaps in a more complex matter where the proof of claim might involve difficult jurisdictional or other issues, this court might favorably consider a well-documented claim for such an allowance. In the present instance, however, Mariam Rodriguez initiated a routine proceeding for relief under Chapter 13. Consequently, M&T has filed a proof of claim in the nature of a simple statement of moneys due and owing. More like a bill than a recitation of complex rights, the proof of claim does not here warrant any extraordinary charge for its preparation. Further, any legal charges for its preparation would have required the same type of proof that is lacking to support the creditor's claim for attorneys' fees in the foreclosure.

## Conclusion

For the reasons described above, in the case of Yvonne Wasson, the court will reduce the claim of Wells Fargo by the sum of $845, which represents a disallowance of legal fees in the amount of $750 and disallowance of reimbursement of $95 for the preparation of a Broker's Price Opinion. In the case of Mariam Rodriguez, the court will reduce the claim of M&T by $650, which sum represents the disallowance of legal fees totaling $400, a Broker's Price Opinion charge of $100, and a proof of claim preparation fee of $150. Otherwise, except for these adjustments, all other objections to the claims of Wells Fargo and M&T are overruled. This order, however, shall be without prejudice to the filing of an amended proof of claim with evidentiary support for the amount and value of itemized legal services actually rendered.

For servicers who manage a large portfolio of loans, the dollar amounts here in dispute may seem petty. Similarly, counsel may find evidentiary requirements for proof of legal fees to be an unwelcome annoyance. But from the debtors' perspective, the present controversy carries great significance. In her confirmed

plan, Mariam Rodriguez will make biweekly payments of $46, a sum which represents the entire excess of income over budgeted expenses. Meaningfully, the disallowed portion of the mortgagee's claim constitutes more than six months of plan contributions. In the case of Yvonne Wasson, the disallowed portion of the Wells Fargo claim will exceed two months of plan payments that also consume the debtor's entire available income. When asked to make payments having such significant impacts on their modest budgets, both debtors appropriately seek to assure the reasonableness of claims against them. Because Wells Fargo and M&T have failed in part to satisfy the legal requirements for the recovery of foreclosure costs and expenses, their claims will be reduced by the amounts indicated herein.

So ordered.

Dated:      Buffalo, New York              /s/      CARL L. BUCKI
            February 24, 2009            Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.